Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1957 | DATE | 03/08/2004 |
| CASE TITLE | United States ex. rel. Wilson v. McAdory | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petition for a Writ of *Habeas Corpus*

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter Memorandum Opinion and Order. For the attached reasons, Wilson's petition for a writ of *habeas corpus* is DENIED and the case is dismissed.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.*, ) <br> JEFFREY TODD WILSON, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> EUGENE MCADORY,[1] ) <br> ) <br> Respondent. ) | No. 00 C 1957 <br><br> The Honorable William J. Hibbler |

DRAFT MEMORANDUM OPINION AND ORDER

Following a bench trial, Petitioner Jeffrey Todd Wilson was convicted in the Circuit Court of Cook County, Illinois, of first degree murder. The state court sentenced Wilson to a term of imprisonment for the balance of his life. After exhausting his state remedies, Wilson filed this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, raising two claims for relief based on evidentiary rulings made by the state trial court. Neither of Wilson's claims warrants *habeas corpus* relief and his petition is DENIED.

I. Factual Background

Wilson does not challenge the statement of facts set forth the Illinois Appellate Court opinion affirming the decision of the Circuit Court of Cook County, and therefore those facts are presumed correct for the purposes of this Court's review. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002); 28 U.S.C. § 2254(e)(1).

On August 4, 1990, Floyd Spencer and Lee Burnett died in a fire that razed a two-story apartment building. John Barnes owned the building and used it and its residents to distribute

---

[1] Eugene McAdory is currently the Warden at the Menard Correctional Center, where Wilson is incarcerated, and is thus the proper respondent in this *habeas* action. See Rule 2(a) of the Rules Governing *habeas corpus* cases under 28 U.S.C. § 2254. This court hereby substitutes McAdory as the respondent. See Fed. R. Civ. P. 25(d)(1).

1

drugs. The four residents of one second-floor apartment, Claude Benson, Charles Williams, Floyd Spencer, and a resident identified in the record only as "J.C." sold drugs supplied by Barnes from their apartment. Beneath these four were Carol Ramsey, Reginald Jett and their daughter. Ramsey was part of the drug operation as well, obtaining drugs from Barnes and giving them to Williams and Benson to sell. But apparently Barnes angered someone in his illegal venture, for fire investigators found evidence at the scene that led them to believe the fire could have been set intentionally. The investigation led officials to Wilson and Patrick Page, who were tried in severed bench trials. The State's evidence against Wilson consisted primarily of a parade of witnesses, many of whom were residents of the building, whose tetstimony linked Wilson to the fire.

Four of the apartment residents—Ramsey, Jett, Benson, and Williams—were present the evening of the fire and three provided testimony that linked Wilson to the crime. Jett testified that the night of the fire he saw a blue Chevrolet Mailbu pass the house several times, though he had not mentioned this fact to the police when they investigated the fire. Jett further testified that later in the evening he heard noises outside, smelled gas fumes, and when he looked outside saw Wilson and the blue Malibu again. A few minutes later, he saw flames and heard two explosions and then fled the building. Ramsey's testimony was consistent with Jett's, but she could not identify Wilson as one of the persons she saw outside the building. Benson testified that he spoke with Wilson the day before the fire and that Wilson gave him warning of the impending fire. According to Benson's testimony, Wilson told him to tell Barnes that the drug house would either be shut down or burned down. Benson further testified that he saw Wilson on August 4, shortly before the fire, outside the building and that Wilson warned him to leave the building because "it's got to go up." Benson stated that he saw Wilson dash some liquid on

the stairway and saw Page light it. He too heard two explosions. The final resident to testify, Williams, also testified that he saw Wilson and Page empty liquid from canisters and then set the liquid on fire.

In addition to the surviving residents, Mary Ward and Kendall Brent made statements that linked Wilson to the murders. Both Brent and Ward were acquainted with Page and Wilson. Three years after the fire, Ward gave a statement to a Cook County Assistant State's Attorney. In this statement, she reported that she was standing on a nearby corner with Brent and Page just before the fire. Ward stated that Wilson, a ranking member of the Black Souls street gang, pulled up in a station wagon with his brother. Brent and Page went to talk with Wilson, and Page got in the car and drove off. Ward stated that Brent then told her that "they got to be crazy, I ain't blowing up anybody." According to Ward, Brent told her that Wilson asked him and Page to help him blow up Barnes' apartment building because Wilson said the people running the drug operation refused to stop selling drugs. Ward said that about ten minutes later, she heard an explosion and saw the apartment building on fire. When Page returned, Ward stated that he told her that he had pulled a cork out of two bombs, thrown them into the front window of the building and then ran before it blew up. Ward later gave similar testimony before a grand jury, but added that Page told Brent that "[i]t was the easiest $200 I ever made" and called Brent a coward because he did not help in the arson.

After taking Ward's statement, the police found Brent, who agreed to go to the police station to give a statement. Brent's statement was similar to Ward's, though it varied some in the details. According to Brent, Wilson approached him and Ward, driving a Toyota 4-Runner, on the steps of Calhoun school at about 3:30 a.m. on August 4, 1990. Wilson had a passenger, whom Brent could not identify. Brent confirmed that Wilson was a member of the Black Souls

3

gang and added that he and Page were members of the Gangster Disciples street gang. But Brent described Wilson as having a different motive. According to Brent, Wilson told him he intended to burn Barnes' building because Barnes refused to pay him a portion of the drug proceeds. Brent stated that Page offered to act as a lookout and got into the vehicle. Brent then walked back to Ward and told her they were crazy. He stated that about 20 minutes later they saw fire trucks going down the street. Then Wilson drove up and Page got out of the vehicle. Page told them that he had gotten $1,000 for helping Wilson.

Both Brent and Ward, however, recanted their testimony at Wilson's trial, each denying that they knew anything about the fire. Brent went so far as to deny ever giving a statement. Ward testified that she was under the influence of heroin when she gave the statement and that the police fed her the information they wanted her to include in the statement, inducing her to finger Wilson by (falsely) telling her that Wilson had participated in her cousin's murder. The State impeached Ward and Brent with their prior inconsistent statements and the trial court admitted their statements as substantive evidence. Wilson objected on hearsay grounds, but the state trial court overruled his objection.

After his conviction, Wilson appealed to the state appellate court, raising three arguments, each of which were related to the admission of the prior inconsistent statements of Ward and Brent. Wilson argued that: (1) the trial court violated his constitutional right to due process in admitting as substantive evidence the prior inconsistent statement of Ward and Brent; (2) the admission of the prior statements violated 725 ILCS 5/115-10.1 (1994); and (3) the admission of the portions of Ward's and Brent's prior inconsistent statements that contained admissions by Page violated his rights under the Confrontation Clause, because Page never testified.

With regard to the due process claim, the state appellate court rejected Wilson's argument that due process prohibited the admission of a witness' prior inconsistent statement because Illinois' statute governing the admission of prior inconsistent statements provided sufficient safeguards to ensure the reliability of any such statements. With regard to Wilson's second claim, the state appellate court held that the admission of Ward's and Brent's statements did not violate 725 ILCS 5/115-10.1, except that portion of Brent's statement that related to Page's admissions after the fire had been started. Finally, with regard to the Confrontation Claus claim, the state appellate court found that the although the portions of Ward's and Brent's statements that contained admissions made by Page after the crime occurred were not admissible under any firmly rooted exceptions. But the state appellate court further reasoned that the trial court's error was harmless because there was more than enough evidence upon which the trier of fact could convict Wilson and because the trier of fact could still have heard the testimony in question for impeachment purposes even if it were not admitted into evidence. The Illinois Supreme Court denied Wilson's petition for leave to appeal.

Having exhausted his state court remedies, Wilson petitions this court for *habeas corpus* relief claiming denial claiming that the admission into evidence of Ward's and Brent's prior inconsistent statements violated his due process rights and that the admission into evidence of Page's admissions (which were contained in the statements of Ward and Brent) violated his rights under the Confrontation Clause.

## II. Analysis

A.  Standard of Review

Wilson filed his petition for federal *habeas corpus* relief in 2000, therefore it is governed by the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

*See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). Under AEDPA, a petitioner is not entitled to a writ of *habeas corpus* unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court. *Id.* at 405-06. A state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule form the [Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. In order for a state court decision to be considered unreasonable under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

B. Wilson's Due Process Claim

Wilson first argues that the state court violated his due process rights when it admitted the prior inconsistent statements of Ward and Brent as substantive evidence. Wilson claims that the statements lacked sufficient reliability because Ward and Brent waited more than two years before going to the police with their knowledge of the crime. Wilson relies on *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970), to support his proposition that it violates due process to admit prior inconsistent statements without sufficient indicia of reliability.

But *Green* does not stand for the proposition that Wilson attributes to it. In *Green*, a California Court had been faced with a recalcitrant witness who claimed not to recall the underlying facts of a prior statement that implicated the defendant, much like Ward and Brent did here. The state court allowed the prosecution not only to impeach the witness with the prior inconsistent statement, but also use it as substantive evidence. *Id.* at 151-52. Although the defendant was convicted, the California courts later vacated that conviction on grounds that admitting the prior inconsistent statements into evidence violated the defendant's rights under the Confrontation Clause. *Id.* at 153. The Supreme Court vacated the determination of the California Supreme Court, holding that where the defendant can cross-examine the declarant, whose prior inconsistent statement has been admitted into evidence, to allow the declarant to explain why the prior inconsistent statement should not be credited, the Confrontation Clause is not implicated. *Id.* at 160-64 ("the witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement"). But the only mention the Supreme Court made of the due process clause was dicta contained in a footnote, and even that fails to support Wilson's position. The Court stated that "[while] we *may* agree that considerations of due process, wholly apart from the Confrontation Clause, *might* prevent convictions where a reliable evidentiary basis is totally lacking . . . we do not read *Bridges* as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted." *Id.* at 164 n. 15 (emphasis added) (internal citations omitted). *Green* simply does not stand for the proposition that if prior inconsistent statements are admitted without sufficient indicia of reliability, a defendant's due process rights are violated. *Id.* Indeed, the Supreme Court later

7

clarified that even where a witness denies ever making the statement and instead testifies favorably for the defendant, no due process violation occurs. *Nelson v. O'Neil*, 402 U.S. 622, 629-30, 91 S. Ct. 1723 ,29 L. Ed. 2d 222 (1971)); *see also Johnson v. Bett*, 349 F.3d 1030, 1037 (7th Cir. 2003) ("[e]ven when presumptively unreliable hearsay is admitted as substantive evidence, there is no violation [of due process or the Confrontation Clause] so long as the declarant testifies as a witness and is subject to cross-examination").

Wilson points to no Supreme Court precedent that clearly establishes that it violates due process to admit into evidence the prior inconsistent statements of witnesses who change their stories at trial when those witnesses are available for cross-examination by the defendant. Indeed, Supreme Court precedent suggests just the opposite *See O'Neil*, 402 U.S. at 629-30; *Green*, 399 U.S. at 164 n. 15. Wilson's claim that the state court's ruling that the use of Ward's and Brent's prior inconsistent statements violated his due process rights is therefore DENIED.

C.   Wilson's Confrontation Clause Claim

Wilson next raises a Confrontation Clause claim. Within the statements of Ward and Brent were hearsay statements allegedly made by Page, Wilson's co-defendant. But Page never testified and thus, Wilson argues, the admission into evidence of those statements violates his rights under the Confrontation Clause.

The state appellate court first separated the admissions made by Page into two categories: those that were made before the fire and those made after the fire. The state appellate court then identified the correct legal rules governing the Confrontation Clause objection raised by Wilson, citing *Bruton v. United States*, 391 U.S. 123, 124, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). The state appellate court also identified the rule set forth in *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987). In *Bourjaily*, the Supreme Court held that the

8

Confrontation Clause is satisfied if the out of court testimony falls within a firmly rooted hearsay exception. *Bourjaily*, 483 U.S. at 183; *see also United States v. Inadi*, 475 U.S. 387, 394-400, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986) (admission of hearsay statements of co-conspirators did not violate Confrontation Clause). The state court then concluded that the statements made by Page to Ward and Brent before the fire fell within Illinois' co-conspirator exception to the hearsay rule, and were admissible. *See People v. Thomas*, 178 Ill. 2d 215, 687 N.E.2s 892 (1997). This is the correct legal rule as set forth by the Supreme Court. *See Bourjaily*, 483 U.S. at 175; *Inadi*, 475 U.S. at 394-400.

The state appellate court also concluded, however, that the Page's hearsay statements made after the fire did not fall into the co-conspirators exception. The state appellate court went on to hold that the error in admitting the hearsay statements made by Page (to Brent) after the fire was harmless, citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), because even without these statements overwhelming evidence linked Wilson to the crime. An error is harmless unless it creates a substantial and injurious effect or influence in the trier of fact's determination. *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S. Ct. 1710, 1717, 123 L. Ed. 2d 353, 367 (1993); *Kotteakos v. United States*, 328 U.S. 750, 765-66, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1567 (1946); *See also Brecht*, 507 U.S. at 623, 113 S. Ct. at 1714, 123 L. Ed. 2d at 363. Where the trier of fact could rely on enough other evidence to convict a defendant even if the questioned evidence were excluded, the error did not corrupt the entire trial and the misjudgment by the trial court will be considered a harmless error. *Brecht*, 507 U.S. at 629, 113 S. Ct. at 1717, 123 L. Ed. 2d at 367. It is well established that a violation of the Confrontation Clause may be deemed harmless. *Denny v. Gudmanson*, 252 F.3d 896, 904 (7th Cir. 2001) (citing *Harrington v. California*, 395 U.S. 250, 253, 89 S. C.t 1726, 23 L. Ed. 2d 284 (1969)).

9

Here, the state appellate court's conclusion that admitting the hearsay statements of Page made after the fire was harmless error is not an unreasonable application of Supreme Court precedent. Even in the absence of Page's post-fire statements, there was more than sufficient information for a trier of fact to convict Wilson. And Wilson makes no real argument that the trial court's error was not harmless.[2] Although Wilson quibbles with the state trial court's credibility determinations, he makes no real argument that the facts as reported by the state appellate court are inaccurate. Those facts confirm that three residents at the apartment gave testimony that linked Wilson to the fire. Jett saw the defendant and heard Benson say they were about to burn down the building. Benson testified that Wilson told him that the apartment building would either be closed down or burned down and that immediately prior to the fire Wilson warned him of his impending danger. Benson also testified that he saw Wilson splash liquid onto the stairwell. Williams also testified that he saw Wilson splash liquid on the stairwell just before the building was set ablaze. In statements to the ASA, Ward and Brent also report that Wilson told them that he was going to burn down the building just before the incident and even that he recruited Brent's help in doing so. Lastly, the statements of Page made before the fire, as reported by Ward and Brent, confirm Wilson's intent to set the apartment building on fire. The Illinois Appellate Court concluded that the trial court committed harmless error in admitting the statements of Page made after the fire. In the face of the overwhelming evidence against Wilson—five witnesses (six if Page is counted) linking him directly to the blaze—the

---

[2] In paragraph 71 of his petition, Wilson asserts without explanation that the error was not harmless, directing the reader to see "Issue I.A." But petition contains no section labeled "Issue I.A." In Paragraphs 64 and 65, Wilson discusses why the decision to admit the entire statements made by Ward and Brent has not a harmless error. For purposes of this argument, however, Wilson must show that the trier of fact would not have had sufficient evidence to convict him excluding only the evidence of Page's statements made after the fire.

Illinois Appellate Court's conclusion can not be construed as an unreasonable application of Supreme Court precedent.

III. Conclusion

After reviewing the record and the submissions from the parties, this Court finds that Wilson failed to identify the law established by the Supreme Court to support his due process claim and that the constitutional error committed by the trial court in admitting Page's post-fire statements was harmless. Therefore, Wilson's petition for a writ of *habeas corpus* is DENIED. IT IS SO ORDERED.

3/8/04
Dated

The Honorable William J. Hibbler
United States District Court